IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-08-0177-04 |
| | § | |
| BERNARDO PENA | § | |

**MEMORANDUM AND ORDER**

The defendant, Bernardo Pena (#66941-179), is presently incarcerated in the United States Bureau of Prisons at a facility in Pollock, Louisiana, as the result of a judgment and conviction entered against him in this Court. Pena has now filed a motion to "modify" his sentence to reduce his term of imprisonment under the "Second Chance Act" [Doc. # 406]. The government has filed a response [Doc. # 407]. The Court has carefully reviewed all pertinent matters in this criminal case. Based on this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, Pena's motion is **denied** for reasons set forth below.

**I.     BACKGROUND**

A grand jury in this district returned a multi-count indictment against Pena and several co-defendants, alleging a conspiracy to commit immigration fraud, among other things. On April 3, 2009, a jury found Pena guilty of conspiracy along with other counts of encouraging and inducing illegal immigration and money laundering. In a judgment entered on December 14, 2009, this Court sentenced Pena to serve a total of 30 months in prison, followed by a 3-year term of supervised release. Pena has filed a notice of appeal, which remains pending

before the Fifth Circuit.

Sometime after his sentence was imposed, Pena surrendered to federal custody on February 17, 2010. He remains incarcerated in the Bureau of Prisons. Pena now seeks relief from his sentence in the form of a court order that would reduce his term of imprisonment by 12 months. In particular, Pena asks this Court to order the Bureau of Prisons to release him from prison one year early and allow him to serve the remaining portion of his sentence of imprisonment in a half-way house. For reasons outlined below, Pena's request must be denied.

## II.   DISCUSSION

Pena requests a modification of his prison sentence under 18 U.S.C. § 3582(c). This statute expressly provides, however, that a court "*may not* modify a term of imprisonment once it has been imposed" unless an exception applies. *Id.* (emphasis added). The circumstances in which a court may reduce a sentence of imprisonment are limited to the following: (1) when the Bureau of Prisons moves the Court to modify the sentence for reasons outlined in § 3582(c)(1); (2) under Rule 35 of the Federal Rules of Criminal Procedure (on the government's motion due to substantial assistance or to correct a clerical mistake within seven days of the date the sentence was imposed); and (3) when the guidelines under which the defendant was sentenced have been subsequently lowered, and a modification of sentence is consistent with the guidelines' policy statements. *See United States v. Bridges*, 116 F.3d 1110, 1112 (5th Cir. 1997) (setting forth limited exceptions for reducing a sentence under 18 U.S.C. § 3582(c) and Rule 35). Pena does not demonstrate that

any of the exceptions apply to his case. Thus, as the government correctly notes, Pena does not identify valid authority that would support the modification to his sentence.

Liberally construed, Pena seeks early release from confinement. For this reason, his motion could be construed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Habeas corpus relief is available, however, only if a prisoner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In this instance, Pena contends that he is entitled to relief under the "Second Chance Act." [Doc. # 406, at 5].

Before addressing Pena's claim, the Court pauses to note that authority over a federal criminal defendant's sentence of imprisonment is vested with the Bureau of Prisons, which is directed to designate the place confinement and to make other decisions concerning the defendant's custody. *See* 18 U.S.C. § 3621; *see also United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993) (observing that "only the Bureau of Prisons has the actual authority to designate the place of incarceration" because "the executive branch and not the judicial branch is responsible for administering sentences"). The Bureau of Prisons is bound to release a prisoner on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward that sentence for good behavior. *See* 18 U.S.C. § 3624(b). The Bureau of Prisons shall also, "to the extent practicable," ensure that a prisoner serving a term of imprisonment spend a portion of the final months of that term in "prerelease custody" under "conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." *Id*. at 3624(c). "Such

3

conditions may include a community correctional facility," also known as a halfway house. *Id.*

The Second Chance Act amended the statutory provisions which authorize the Bureau of Prisons to determine an inmate's eligibility for placement in a halfway house. *See* Second Chance Act of 2007, Pub. L. No. 110-199, § 251(a), 122 Stat. 657, 692-93 (April 9, 2008), codified at 42 U.S.C. § 17501. These amendments authorize the Bureau of Prisons to allow a prisoner serving a term of imprisonment spend a portion of the final months of that term (not to exceed 12 months) in a halfway house, *see* 18 U.S.C. § 3624(c), and to make placement decisions on an individual basis consistent with the criteria set forth in 18 U.S.C. § 3621(b).[1] Pursuant to these amendments, the Bureau of Prisons issued the following revised regulation regarding halfway house placement:

> Inmates may be designated to [halfway houses] as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

*Pre-Release Community Confinement*, 73 Fed. Reg. 62,440, 64,443 (Oct. 21, 2008), codified at 28 C.F.R. 570.21(a).

The Fifth Circuit has not yet addressed the merits of a claim under the Second Chance Act. *See Broderick v. Chapman*, 364 F. App'x 111, 2010 WL 445441 (5th Cir. Feb. 5, 2010)

---

[1] This statute provides that "[t]he Bureau of Prison shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). The statute also sets forth a number of factors for consideration when making that designation, including: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . .; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2)]." *Id.*

(affirming a dismissal for failure to exhaust administrative remedies); *Rivkin v. Tamez*, 351 F. App'x 876, 2009 WL 3489428 (5th Cir. Oct. 29, 2009) (same). Of the courts that have considered such claims, most have observed that the Second Chance Act does not authorize any type of modification that would sentence a defendant to a halfway house or any other pre-release program by the Bureau of Prisons. *See United States v. Rhodes*, No. 1:07CR612, 2008 WL 4657069 (N.D Ohio Oct. 21, 2008); *see also McCarthy v. United States*, 2010 WL 5162025 (M.D. Fla. Dec. 14, 2010) (observing that the Second Chance Act provides no authority to modify the defendant's sentence); *United States v. Peeples*, No. 3:10-580, 2011 WL 743103 (D.S.C. Feb. 24, 2011) (rejecting a prisoner's request to modify his sentence under the Second Chance Act for lack of jurisdiction). In that regard, even assuming that the claims are actionable under 28 U.S.C. § 2241, courts have recognized that the Second Chance Act affords "no affirmative right to placement in a half way house," or to a 12-month placement of the type that the defendant demands in this instance. *Stanko v. Rios*, 2009 WL 1303969, *3 (D. Minn. May 8, 2009), *aff'd*, 366 F. Appx. 725 (8th Cir. 2010). Rather, the only relief that a reviewing court is authorized to grant is an order directing prison officials to consider the prisoner for placement in a halfway house in compliance with the Second Chance Act amendments. *See, e.g., Fields v. Woodring*, No. CV-08-426, 2008 WL 4911872, *4 (C.D. Cal. Nov. 14, 2008); *Smith v. Sanders*, No. CV-09-3083, 2009 WL 2900317, *6 (C.D. Cal. Sept. 3, 2009); *Bell v. Sanders*, No. CV-10-3739, 2010 WL 5631740, *4 (C.D. Cal. Dec. 16, 2010).

The government notes that, to date, Pena has not served half of the 30-month sentence

imposed by this Court. As such, he is not yet eligible for consideration or evaluation for eligibility by the Bureau of Prisons for early release to a halfway house. It follows that Pena cannot show that he has been denied consideration for early release or placement in a halfway house in violation of the Second Chance Act. As a result, Pena's motion fails to state a claim over which this Court has jurisdiction.[2]

Likewise, to the extent that Pena's claims are actionable under the federal habeas corpus statutes, Pena does not allege or show that he has attempted to exhaust available administrative remedies with respect to his claims before pursuing federal review.[3] The Fifth Circuit has determined that a federal prisoner seeking relief under 28 U.S.C. § 2241 "must first exhaust his administrative remedies through the Bureau of Prisons." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *United States v. Gabor*, 905 F.2d 76, 78 n.2

---

[2] It is well established that Article III of the United States Constitution empowers the federal courts to hear only live cases and controversies. U.S. CONST. art. III § 2; *Horne v. Flores*, — U.S. —, 129 S. Ct. 2579, 2592 (2009); *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). A case or controversy must be ripe for decision, meaning that it must not be premature or speculative. *See Shields v. Norton*, 289 F.3d 832, 834-35 (5th Cir. 2002); *see also LeClerc v. Webb*, 419 F.3d 405, 413-14 (5th Cir. 2005) ("The ripeness doctrine counsels against 'premature' adjudication by distinguishing matters that are 'hypothetical' or 'speculative' from those that are poised for judicial review.") (quotation omitted). Like standing, "ripeness is a constitutional prerequisite to the exercise of jurisdiction." *Shields*, 289 F.3d at 835 (citation omitted).

[3] The Bureau of Prisons has established a three-tiered administrative remedy procedure for federal prisoners. *See* 28 C.F.R. §§ 542.10 – 542.19. Under this system, an inmate may file a formal grievance with the warden if informal resolution is not successful. *See id.* at § 542.13. Once the warden denies an inmate's grievance, the prisoner may appeal to the Regional Director. If dissatisfied with that response, the inmate may pursue a final appeal to the BOP's Office of General Counsel. *See id.* at § 542.15(a). Administrative remedies have not been exhausted until the inmate's claim has been filed and denied at all levels. *See Irwin v. Hawk*, 40 F.3d 347, 349 n.2 (11th Cir. 1994).

(5th Cir. 1990) (citations omitted); *Lundy v. Osborn*, 555 F.2d 534, 534-35 (5th Cir. 1977) ("[G]rievances of prisoners concerning prison administration should be presented to the Bureau [of Prisons] through the available administrative channels. Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.") (citations omitted)).

The purpose of the exhaustion requirement is to allow an administrative agency "to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37-38 (1972) (citing *McKart v. United States*, 395 U.S. 185, 194-95 (1969)); *see also Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (observing that, by failing to exhaust, the petitioner was "demanding that the federal court order the agency to correct any error rather than permitting the agency to do so on its own"). Exceptions to the exhaustion requirement are appropriate only where "'the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action.'" *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (quotation omitted). Because Pena does not allege or show that he has been denied consideration for early release under the Second Chance Act, and that he has exhausted all available administrative remedies, his pending motion must be denied as premature at this time.

### III.   CONCLUSION AND ORDER

Accordingly, because Pena does not articulate a valid claim for relief, it is

**ORDERED** that his motion for early release [Doc. # 406] is **DENIED** at this time.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas on <u>March 30</u>, 2011.

_____
Nancy F. Atlas
United States District Judge